OMER DOCKSTADER, Plaintiff-Appellee, *v.* B. EMMET HARTNETT *et al.,* Defendants-Appellants.

(No. 54605; )

First District—October 6, 1972.

Richard L. Curry, Corporation Counsel, of Chicago, (William R. Quinlan and Howard C. Goldman, Assistant Corporation Counsel, of counsel,) for appellants.

Maurice J. Nathanson, of Chicago, (Ronald S. Cope, of counsel,) for appellee.

Mr. JUSTICE DRUCKER delivered the opinion of the court:

On November 2, 1962, the Zoning Administrator of the City of Chicago denied plaintiff's application for a certificate of occupancy[1] to operate an auto repair and storage business at 7312-18 North Rogers Avenue. The order denying the application stated that the proposed improvement did not conform with the requirements of the Chicago Zoning Ordinance. The order was affirmed by the Zoning Board of Appeals of the City of Chicago on August 7, 1963. On review to the Circuit Court under the Administrative Review Act (Ill. Rev. Stat. 1963, ch. 110, par. 264 *et seq.*), the court remanded the cause to the Zoning Board of Appeals for further hearings because the record filed by the defendants was incomplete. Upon remand further testimony was received and on July 28, 1966, the earlier decision was reaffirmed. Plaintiff again sought review in the circuit court which set aside the decision of the Zoning Board of Appeals. The defendants appeal from this decision.

The sole issue on appeal is whether plaintiff's use of the subject premises as an auto repair shop is a legal non-conforming use under the Chicago Zoning Ordinance.

The subject building can be described from photographs in the record as follows: It lies on the west side of an alley which has an entrance from the south on Rogers Avenue. It contains a one-story, brick factory-type building which has one small window with light from the outside coming through a skylight on the roof. The building is about 100 feet long (on the north-south sides) and 55 feet wide (on the east-west sides). A small open yard lies adjacent to the south and is used to park trucks and cars. At the time plaintiff applied for the certificate of occupancy the area was zoned B2—2, Restricted Retail District.

The following is a summary of the testimony elicited at the hearings held before the Zoning Board of Appeals:

Joseph Brader testified for the plaintiff. He is the contract seller of the subject property. He built the building in 1948 when the area was zoned for commercial purposes and used it for storing and crating furniture. Trucks were kept in the building and adjacent yard for use incidental to the main operation. This use was continued until 1955 at which time he leased the premises to a Mr. Rusnak. For several years Rusnak used the property for storing, manufacturing and repairing

---

[1] Section 11.6 of the Chicago Zoning Ordinance provides in relevant part:
"No change in a use other than that of a permitted use in a district shall be made until a certificate of occupancy has been issued by the Office of the Zoning Administrator. Every certificate of occupancy shall state that the use of occupancy complies with all the provisions of this comprehensive amendment."

furniture. He then subleased the building to a Mr. Goren. Goren used the premises to grind plastic into pellets. Plaintiff entered the premises in 1960.

Plaintiff testified that he has continuously used the building for repairing and storing cars since occupying it in March 1960.

Several persons who resided in nearby townhouses testified for the defendants. They stated that a large amount of noise and paint fumes emanated from plaintiff's building.

Ronald Handler, an architect and builder, and an owner of a house just west of plaintiff's building, testified for the defendants. He felt that plaintiff should move to a zoning district that allows an auto repair business or should use his premises for any one of 20 uses associated with retail businesses that are permitted in a B2—2 district. The premises would be unsuitable for the other 40 uses permitted in a B2—2 district since it fronts on an alley.

Based upon the foregoing evidence the Zoning Board of Appeals concluded that the Zoning Administrator properly denied plaintiff's application for a certificate of occupancy for use of the premises as a garage for the storage and repair of automobiles. The circuit court reversed.

*Opinion*

■■ The issue on appeal is whether plaintiff's use of the premises as an auto repair shop is a legal non-conforming use. It arises within the context of the established rule that a decision of an administrative body will not be reversed unless contrary to the manifest weight of the evidence. *Gloss v. Board of Trustees, Firemen's Pension Fund* 132 Ill.App.2d 736, 270 N.E.2d 472.

It is undisputed that the use of the premises prior to 1958 conformed to the commercial zoning classification then existing in the district. With the passage of the comprehensive amendment to the Chicago Zoning Ordinance (effective January 1, 1958) the district was rezoned B2—2, Restricted Retail District. A storage and repair shop, the use of the premises when the amendment took effect, is not a permitted use in a B2—2 district. Thus, the status of the premises on January 1, 1958, was that of a legal non-conforming use since under the ordinance any use of a building that does not comply with all the regulations governing use for the zoning district in which it is located is a non-conforming use and Section 6.2 provides:

> "[The use of a] building or structure which shall become non-conforming upon the adoption of this comprehensive amendment * * *, may be continued, some for specified and respective periods of time, subject to the regulations which follow."

Defendants, however, contend that plaintiff's change of use in 1960 to an auto repair shop abrogated its previous status as a legal non-conforming use. In support they rely on Section 6.5 of the ordinance and especially subsection 6.5—3.[2] Plaintiff, on the other hand, contends that Section 6.5 and its subsections are inapplicable to the instant case and that Section 6.4 applies.

The general distinction between Sections 6.4 and 6.5 is set forth in Section 6.1—1 which is headed "Organization of this Article" (which deals with non-conforming buildings, structures and uses). It provides in relevant part:

"Following general and explanatory paragraphs (6.2 and 6.3) this Article is then divided into three major parts:

(1) The regulation of buildings and structures which do not conform to the regulations of the district in which they are located and the regulation of non-conforming uses which are located in buildings or structures which buildings or structures *are designated or intended for uses not permitted* in the district in which the building or structure is located. An example of such a building would be a bulk storage tank in a Business District or a factory building in a Residence District (Section 6.4).

(2) The regulation of non-conforming uses which are located in buildings or structures which buildings or structures *are designed or intended for a use permitted* in the district in which the building or structure is located. An example would be a beauty parlor or grocery store on the ground floor of a three-story apartment house in a Residence District or a manufacturing operation in an office building in a Business District (Section 6.5)." (Emphasis supplied.)

It is clear from the above that Section 6.5 and its subsections are to apply in the instant case only if the subject building was designed or intended for a use permitted in a B2—2, Restricted Retail District, the district in which it is located. Plaintiff argues, and we must agree after a careful review of the record, that the subject building, *i.e.*, a large one-story brick, factory-type building with essentially no windows and which fronts on an alley with no other egress, certainly was not designed or intended for any of the various uses specified in Section 8.3—2 which

---

[2] Subsection 6.5—3, headed "Change of a Non-Conforming Use," provides as follows:

No non-conforming use shall be changed to another non-conforming use when such non-conforming use is located in a building or structure, all or substantially all of which building or structure is designed or intended for a permitted use.

sets forth the permitted uses in a B2—2 district.[3] The person who constructed it, Joseph Brader, testified that it was to be used for the storage, repair and crating of furniture. In essence, the subject building, located in a B2—2 district, is analogous to a "bulk storage tank in a Business District or a factory building in a Residence District" which are examples set forth in Section 6.1—1 (1), *supra*, to show when Section 6.4 should apply. Therefore, defendants' reliance on Section 6.5 and its various subsections is misplaced.

We believe that Section 6.4 and particularly 6.4—7 governs the instant case. Section 6.4 provides:

> "Any lawfully existing building * * * which does not conform to the regulations of the district in which it is located may be continued subject to the provisions of this Section 6.4."

Subsection 6.4—7 provides:

> "*Change of Use in Non-Conforming Building.* The non-conforming use of a building or structure, all or substantially all of which is designed or intended for a use not permitted in the district in which it is located, *may be changed to a use permitted in the same district as the non-conforming use which presently occupies the building or structure or to a use permitted in a more restrictive district,* but no such change shall extend or otherwise modify the provisions for elimination of such non-conforming building or structure and the use thereof as provided in subsection 6.4—8 hereof. For the purpose of this subsection only, the R1 District shall be considered the most restrictive and the M3 District the least restrictive district." (Emphasis supplied.)

It appears that the intent of the subsection is to permit the lawful change of one non-conforming use to another non-conforming use so long as the latter use is no less restrictive (or phrased differently, no more intensive) than the former non-conforming use. The above subsection might be interpreted as stating that a non-conforming use must be changed to a use permitted in the district in which it lies (a use permitted in a B2—2 district in the instant case) or any more restrictive

---

[3] In general, a B2—2 district allows for a myraid assortment of retail stores and some other uses such as a physical culture and health center, and schools of music, dance or business; these latter uses would not be permitted in the instant case since they are prohibited if located on the ground floor within 50 feet of a "street." The *only* outlet from the subject premises is an adjacent alley. Under the Chicago Zoning Ordinance this would make what generally is considered an alley a "street" since a "street" is defined in Section 3.2 as a "public right-of-way which affords a primary means of access to abutting property." An "alley" is defined as "a public right-of-way which affords a secondary means of access to abutting property."

district (R-1 for example). However, such an interpretation would render the distinction between Sections 6.4 and 6.5 meaningless since Section 6.5, and particularly Subsection 6.5—3, *supra*, also permits changing a non-conforming use to one which conforms to the district in which it is located.

Accordingly, we believe that plaintiff's auto repair shop still qualifies as a lawful non-conforming use if it is a permitted use in the district in which the previous use would be permitted (or any more restrictive district).

■■ The previous use of the property was for the manufacturing of plastic pellets. Before that the property was used for the storage, repair and production of furniture. Either of the above uses would fall within Section 9.3—1 which specifies permitted uses in C1—C5, Restricted Commercial District. Number 14A of this section permits the operation of plaintiff's business, the storage and repairing of motor vehicles. Therefore, plaintiff's change in use falls within the provision of Section 6.4—7, *supra*, and his business still maintains the status of a lawful non-conforming use.

The decision of the Zoning Board of Appeals was against the manifest weight of the evidence. The decision of the circuit court reversing the Board's decision is therefore affirmed.

Judgment affirmed.

LORENZ, P. J., and ENGLISH, J., concur.